NORTHAM RANGE ASSOCIATION, a NON-PROFIT CORPORATION, APPELLANT, v. JOHN J. CASEY, MICHAEL P. CASEY, AND WILLIAM H. CASEY, RESPONDENTS.

No. 4096

May 14, 1959                                    339 P.2d 384

*James W. Johnson, Jr.*, of Reno, for Appellant.

*Diehl and Recanzone,* of Fallon, for Respondents.

## OPINION

By the Court, MERRILL, C. J.:

This action is brought by appellant association to recover damages for trespass resulting, it is alleged, when respondents placed herds of cattle upon the grazing lands of appellant located in Churchill County.

The trial court, sitting without jury, concluded that appellant had failed to show that it was entitled to

exclusive possession of the lands in question. Judgment for respondents was rendered upon this ground, and this appeal is from that judgment. Appellant contends that the record establishes beyond question its exclusive right to possession of the grazing lands involved. This is the sole question presented by the appeal.

Appellant's right to possession is derived from a lease granted by the Truckee-Carson Irrigation District. That district is a public corporation, an irrigation district encompassing lands in Churchill County. The United States has granted the district custodial authority over all public lands within the district's boundaries.

Appellant association is composed of ranchers whose home properties lie within the Northam and Swingle bench areas of the irrigation district.

The district has exercised its custodial authority over the grazing lands within its boundaries in two ways: (1) By the issuance of grazing permits. These appear to have been limited to a specified number of livestock within a specified area and for a limited time within a single grazing season from April 1 to October 31 of the same year. They were not necessarily exclusive, and it would appear that any number of permittees might run stock upon the same area. (2) By leases to individuals and organizations for a period of years. It is asserted that these so-called leases (including the one here involved) were actually nothing more than licenses. The distinction is not material to the issue before us which is whether the grazing privileges thereby granted were exclusive. The district has referred to these grants as leases and although the label is questionable we shall, in this opinion, follow the district's example.

The problems encountered by the district with reference to its management of grazing lands were the subject of a letter from the district written July 7, 1956 to district members. It was pointed out in that letter that the unfenced custodial lands were a source of trouble between users; that, in a few instances, leases had been negotiated, in which cases "the lessee provided his own protection by fencing or other means"; that as to the

bulk of its lands, where disputes had occurred, the district had been unsuccessful in negotiating leases; that negotiations had failed in such cases because of the inability of the individual users to band themselves together into organizations.

It is thus apparent that the district was seeking to encourage its members to band themselves into organizations in order that leases might be granted to such organizations which would then provide their own protection in their use of the leased areas. It was hoped that disputes resulting from the common use of unfenced grazing lands might thereby be eliminated.

On December 7, 1955 a meeting of the board of directors of the district was held for the purpose of discussing a lease of the Swingle bench and Northam areas to the ranchers located in those areas. Respondent John Casey, whose property adjoined the Northam area, was present, and objected to the lease being granted. From the record it would appear, however, that it was the understanding reached at that meeting that should these ranchers form an organization a lease would be granted to that organization. Appellant association was then organized and a lease was granted March 7, 1956.

The alleged trespass subsequently occurred.

The lease provides that the district "does hereby grant and lease to the association the exclusive regulation and control of grazing and grazing rights" within the leased area. Rental was fixed at 25 cents per animal unit month, as determined by a representative of the district. The lessee was authorized to construct "fences or other structures, buildings or barriers" and to remove the same after the termination of the lease. The lease might be terminated by either party, upon 60 days' notice.

On August 7, 1956, after the alleged trespass had been brought to the attention of the district, a grazing permit was issued by the district to respondent William Casey, permitting grazing within certain areas of the district including the Swingle bench area. Although issued on August 7, 1956 the permit purported to be effective as of April 1, 1956.

The trial court ruled that the lease to the appellant association did not grant exclusive grazing rights to the lessee. From its opinion it would appear that the court recognized an attempt or intent on the part of the district to grant exclusive rights by this instrument. The court felt, however, that the exclusive nature of these rights had been destroyed by the district itself through its subsequently granting the grazing permit to respondent William Casey.

The trial court's ruling we must hold to be error. The exclusive character of the lease could not be destroyed by the district's subsequent unilateral act. By agreement it had parted with its right to nullify the grant of exclusive grazing rights by any unilateral act other than 60 days' notice of termination.

Respondents contend that the lease should be construed as exclusive only in the event that the leased lands were fenced by the lessees (which they were not). We cannot so construe the instrument. Fencing was permissive and was not expressed as a requirement or an essential condition.

At the time of the alleged trespass, then, appellant district was possessed of the exclusive rights to grazing upon the lands covered by the lease.

Respondents' principal contention upon trial below and upon this appeal is that the facts demonstrate that no trespass had been committed but that the presence of their cattle upon the lands of the appellant resulted from the natural drifting of cattle upon unfenced land. No findings were made upon this point, and the evidence is in dispute. The determination, then, remains for the trial court.

Reversed and remanded for new trial.

MCNAMEE and BADT, JJ., concur.